# Daniel Szalkiewicz
# & Associates

23 West 73rd Street  
Suite 102  
New York, NY 10023

T: (212) 706-1007  
F: (646) 849-0033  
lawdss.com

July 31, 2024

**<u>Via NYSCEF</u>**  
Hon. Naomi Reice Buchwald  
Daniel Patrick Moynihan  
United States Courthouse  
500 Pearl St.  
New York, NY 10007-1312

*Re:*   *C.K. v. Rigueur*  
*District Court, Southern District of New York*  
*Docket No. 24 Civ. 2778(NRB)*

Dear Judge Buchwald,

      Our office represents plaintiff, C.K. ("Plaintiff") in the above referenced matter. I submit this letter in opposition to the motion to quash a subpoena duces tecum (the "Subpoena") on Fenix International Limited d/b/a OnlyFans ("OnlyFans") filed by defendant Jeffrey Rigueur a/k/a Jeffrey R. Wing ("Rigueur" or "Defendant").

      The Complaint alleges that Defendant owns an OnlyFans page using the account name "thecosmonaut" (the "Account"). The Complaint further alleges that Rigueur filmed Plaintiff with and without her consent and then shared the content – for a fee – on OnlyFans against her explicit wishes. Defendant's Account has two primary revenue streams: first the Account makes money from basic subscribers who can view content for free and second it also generates money from subscribers who purchase additional explicit content after being prompted and enticed to do so by private messages. Rigueur is alleged to have violated 15 USC § 6851, New York City Administrative Code §10-180, Civil Rights Law §52-b, and Civil Rights Law 50/51.

      On July 12, 2024, our office served the Subpoena on OnlyFans and the Notice of Subpoena on Defendant's counsel. The Subpoena seeks disclosure of six different categories: (1) communications and documents to and from OnlyFans and Rigueur regarding his "hosting, publishing, or displaying nonconsensual videos or images"; (2) any contracts between Rigueur and OnlyFans; (3) in the event that Rigueur's Account is not held in his name, any contracts between OnlyFans and the Account holders; (4) any documents or communications received by OnlyFans regarding an individual's consent to have their images or videos shared on the Account; (5) all payments made to the Account from 2020 until present; and (6) the view count on the videos displayed on the Account.

      Initially, Defendant's request to quash the nonparty subpoena should be denied because of the longstanding rule that "[i]n the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness." *Chevron Corp. v Donziger*, 325 F Supp 3d 371, 386-387 (SDNY 2018). This is due to the fact "[a] party's general

DS &A

July 31, 2024
Page 2

---

desire to thwart disclosure of information by a non-party is simply not an interest sufficient to create standing." *US Bank N.A. v PHL Variable Ins. Co.*, 2012 US Dist LEXIS 158448, at *6 (SDNY Nov. 5, 2012). Defendant lacks the relevant standing to move to quash the non-party Subpoena.

An exception to the general rule, which does not apply in the current case, is "a non-subpoenaed party has standing . . . if it has a privilege, privacy[,] or proprietary interest in the documents sought." *Major League Baseball Props. v Corporacion De TV Y Microonda Rafa*, 2023 US Dist LEXIS 13808, at *2-3 (SDNY Jan. 26, 2023]). The privacy right must be a "substantial privacy right." *Virtu Fin. Inc. v. Axis Ins.* Co., No. 20-CV-6293 (GBD) (KHP), 2021 U.S. Dist. LEXIS 178799, at *2 (S.D.N.Y. Sep. 20, 2021).

Defendant's pre-motion letter appears to focus on the relevancy of the documents sought. However, as stated above, Defendant lacks standing to argue that the information sought is irrelevant. *See Major League Baseball Props., surpa*. Likewise, "'[r]elevance' is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *KISS Nail Prods., Inc. v Lashify, Inc*., 2024 US Dist LEXIS 63160, at *4 [SDNY Apr. 4, 2024]).

The Subpoena, as a whole, seeks information relevant to Plaintiff's claims. The Account cannot be viewed in isolation. An OnlyFans account does not contain individual pages but is rather a continuous webpage that contains numerous posts depicting multiple individuals. For example, Rigueur's Account contains 288 posts, and new posts appear as one scrolls down his page (see Exhibit 1). Defendant's attempt to pick apart the Subpoena denies Plaintiff the opportunity to obtain information that "reasonably could lead to other matter that could bear on" Rigueur's profiting from sharing Plaintiff's video.

Looking at Rigueur's specific objections to the Subpoena, he lacks standing to challenge the First Request because he merely objects the fact OnlyFans may not know what the term "nonconsensual" means and that it is overbroad because it may capture Rigueur's other victims in addition to Plaintiff. More so, Defendant's "substantial privacy rights" are not affected by complaints third parties have made about this Account.

Defendant next argues that Request 2 and 3 should be limited to contracts "between the site and Defendant *regarding Plaintiff* during the relevant time frame[.]" To limit the subpoena to only contracts concerning Plaintiff presumes that OnlyFans has a specific contract per a specific video uploaded. It does not. The demand also encompasses agreements Rigueur made when he first opened the Account. Clearly the representations Rigueur made to OnlyFans regarding the account are relevant to the action.

Once again, with regard to Request 4, Defendant lacks standing to raise his objection to whether OnlyFans has a "way of determining whether the content was consensual or not." More

DS&A

July 31, 2024
Page 3

---

so, the language in the Subpoena mirrors OnlyFans' language regarding NCII (Exhibit 2). Finally, complaints made by third parties to OnlyFans' regarding Defendant's conduct are not private.

Regarding Request 5, as previously stated, Rigueur earns money when third parties access his OnlyFans page and view videos (Exhibit 1), when viewers offer tips, and when third parties purchase premium content such as the videos he uploaded of Plaintiff. All payments made to Rigueur are relevant. However, Plaintiff will agree to limit the time frame of Request 5 to August 1, 2021 – the time Plaintiff first meet Defendant – until April 12, 2024, the date of the Complaint.

Finally, concerning Request 6, Defendant lacks the standing to challenge Plaintiff's request for view counts on a public profile and videos he posted online are not a "substantial privacy right[.]" The number of people who viewed Plaintiff's intimate content is relevant to determining – in part – the degree of Plaintiff's injury as well as the amount of money Defendant earned from unlawfully hosting Plaintiff's content.

The information is also relevant because each of the causes of action allow for either punitive damages or exemplary damages. When determining the amount of punitive damages, the Southern District considers whether "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or reckless disregard of the health and safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Villalta v. JS Barkats, P.L.L.C.*, No. 16-CV-2772 (RA) (RWL), 2021 U.S. Dist. LEXIS 75071, at *49 (S.D.N.Y. Apr. 16, 2021). Plaintiff has reason to believe she is not Rigueur's only victim; as such the information sought focuses on Rigueur's "repeated actions" and utter "reckless disregard of the health and safety" of his victims.

Because of Rigueur's lack of standing, and the relevance of the information sought, his request to file a motion to quash the Subpoena should be denied.

Respectfully submitted,

DANIEL SZALKIEWICZ & ASSOCIATES, P.C.
*/s/ Daniel Szalkiewicz*

By: Daniel S. Szalkiewicz, Esq.
